## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELEWARE

| | |
|---|---|
| HID GLOBAL CORPORATION, and ASSA ABLOY AB,<br><br>Plaintiffs,<br><br>v.<br><br>WAVELYNX TECHNOLOGIES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs HID Global Corporation and ASSA ABLOY AB (collectively, "Plaintiffs") hereby file this Complaint and demand for a jury trial seeking relief for patent infringement by Defendant WaveLynx Technologies Corporation ("WaveLynx"). Plaintiffs state and allege the following:

### NATURE OF THE ACTION

1.      Plaintiffs and WaveLynx compete in the physical access control systems ("PACS") industry. Plaintiffs are a leader in the PACS industry, and have developed a valuable ecosystem of products and acquired patents on this technology. WaveLynx has improperly made use of Plaintiffs' patented technology. This infringement has resulted in Plaintiffs bringing this Complaint to hold WaveLynx responsible for its wrongdoing and to protect Plaintiffs' innovations.

### THE PARTIES

2.      Plaintiff HID Global Corporation ("HID") is a Delaware corporation, with its principal place of business at 611 Center Ridge Drive, Austin, TX 78753.

3.      Plaintiff ASSA ABLOY AB ("AAAB") is a company organized under

the laws of Sweden with its principal place of business at Klarabergsviadukten 90,

Stockholm, 111 64, Sweden.

4.      On information and belief, WaveLynx Technologies Corporation is a

Delaware corporation with its principal place of business at 100 Technology Drive

Suite B130, Broomfield, CO, 80021.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. § 271 *et seq*. This Court has subject matter jurisdiction over this

action under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has jurisdiction over WaveLynx because it is incorporated in this

judicial district.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because

WaveLynx is incorporated in this judicial district.

## BACKGROUND

8.      AAAB is the parent company of several entities worldwide that are leaders in

the delivery of secure identity solutions for millions of customers throughout the world. These

identity solutions are used in a variety of applications, including physical access control,

logical access control, access card printing and personalization, highly secure government

identification, and animal identification. These products, solutions, and services are sold

through a well-established network of OEMs, developers, systems integrators, and

distributors worldwide. End users of these products, solutions, and services include businesses

and organizations in virtually all industry sectors, including government, healthcare, retail,

industrial, commercial, consumer, airports, ports, finance, and education. AAAB is the

ultimate parent company of HID.

2

9.      HID is a worldwide leader in trusted identity solutions. Its products range from physical access products, like ID cards and readers for opening doors, to solutions for accessing digital networks, verifying transactions, and tracking assets. Millions of people around the world use HID products and services to navigate their everyday lives, and over 2 billion things are connected through HID technology. HID Global has over 3,000 employees worldwide and operates international offices that support more than 100 countries.

10.      HID serves its clients by providing various products and solutions for a wide array of industries throughout the United States and across the globe.

11.      WaveLynx is also a business providing PACS, including access control readers that operate over multiple communication standards and radio frequencies. WaveLynx was founded and is led by former HID employees, namely Hugo Wendling (CEO), Mike Conlin (COO), and Mike Malone (Senior Product Architect). WaveLynx competes with HID, and sells and seeks to sell its radio frequency identification ("RFID") readers to various industry sectors, including those to which HID sells its products. As set forth below, certain WaveLynx products infringe the inventions that are disclosed and protected by the '862 patent.

12.      WaveLynx knew the '862 patent at least as early as March 16, 2016 when it sought to license the '862 patent from Plaintiffs. Specifically, on March 16, 2016, Mike Conlin of WaveLynx contacted Plaintiffs "to discuss licensing the appropriate IP around LF & HF combined readers."  Ex. 1 at 3-4 (March 16, 2016 Email fr Conlin to Bailin). On March 22, 2016, Plaintiffs offered WaveLynx a license to the '862 patent. Ex. 1 at 1-3 (March 22, 2016 Email fr Bailin to Conlin). On information and belief, WaveLynx sought to license the '862 patent from Plaintiffs because WaveLynx knew that its products infringe the claims of the '862 patent. WaveLynx, however, failed to obtain a license to the '862 patent. On information and belief, WaveLynx has not has not taken any affirmative steps to avoid infringing the '862 patent.

3

**THE PATENT-IN-SUIT**

13.    AAAB is the assignee of United States Patent Nos. 7,439,862 (the "'862 patent")

entitled "Antenna Array For An RFID Reader Compatible With Transponders Operating At

Different Carrier Frequencies," issued on October 21, 2008. *See*  Ex. 2 ('862 patent). HID is the

licensee of the '862 patent.

14.    The '862 Patent generally discloses, among other things, a RFID reader that

includes at least two reader antennas that operate at different carrier frequencies. The reader

antennas are arranged in a configuration that optimizes performance of the RFID system, while

maintaining a compact size.

**COUNT I: INFRINGEMENT OF THE '862 PATENT**

15.    Plaintiffs hereby incorporate by reference and reallege their allegations contained

in all of the preceding paragraphs of this Complaint as though fully set forth herein.

16.    Upon information and belief, WaveLynx has infringed and continues to infringe,

either literally or under the doctrine of equivalents, at least claims 1—4 of the '862 patent

pursuant to 35 U.S.C. §§ 271(a), (b), and (c) by making, using, offering to sell, or selling in the

United States WaveLynx's RFID readers ("Accused Products").

17.    Claim 1 of the '862 patent is generally directed to a RFID reader that is able to

communicate over different frequencies. Claim 1 recites:

> An antenna array for an RFID reader comprising:
>
> a first reader antenna tuned to operate at a first low carrier frequency
> enabling data communication with a first transponder transmitting
> data signals at said first low carrier frequency; and
>
> a second reader antenna tuned to operate at a second high carrier
> frequency different from said first low carrier frequency enabling data
> communication with a second transponder transmitting data signals at
> said second high carrier frequency, wherein the first and second
> antennas are oriented along axes that are substantially parallel to one

4

another.

18.     Claim 2 recites:

The antenna array of claim 1, wherein said first low carrier frequency
is nominally 125 kHz.

19.     Claim 3 recites:

The antenna array of claim 2, wherein said second high carrier
frequency is about 13.56 MHz.

20.     Claim 4 recites:

The antenna array of claim 1, further comprising a reader housing
containing said first and second antennas.

21.     The Accused Products, including at least WaveLynx's Ethos Readers, infringe at

least claims 1—4 of the '862 patent, as illustrated in an exemplary claim chart attached hereto as

Ex. 3.

22.     The Accused Products are "multi-technology contactless access control readers"

able to securely communicate data over multiple standard communications technologies. Ex. 4

(WaveLynx Ethos Datasheet *available at* https://wavelynxtech.com/wp-

content/uploads/2022/03/WL-EN-Ethos-Readers-DS-3.8-031022-1.pdf) at 1. Such technologies

include "Proximity (125kHz), Smart (13.56MHz), NFC, and Bluetooth":



Ex. 4 (WaveLynx Ethos Datasheet) at 1.

23.     The Accused Products, including at least the ET10-7, ET20-7, and ET25-7 models of WaveLynx's Ethos Reader, interoperate with WaveLynx's MyPass Mobile, which is functionally-related to the Accused Products. In particular, WaveLynx's MyPass Mobile is a mobile application that "securely stores your MyPass ID and communicates it securely to your access control system for authentication."  Ex. 5 (MyPass Mobile Datasheet *available at* https://wavelynxtech.com/wp-content/uploads/2020/07/WL-EN-MyPass-Mobile-Credentials-DS-1.2-07072020.pdf) at 1. WaveLynx's MyPass Mobile interacts with the Accused Products to allow control of the door controller.  Ex. 5 (MyPass Mobile Datasheet) at 1.



Ex. 5 (MyPass Mobile Datasheet) at 1.

24.     The Accused Products, including at least the ET10-7, ET20-7, and ET25-7 models of WaveLynx's Ethos Reader, also interoperate with LEAF credential support.  Ex. 4 (WaveLynx Ethos Datasheet) at 1.  WaveLynx offers the WaveLynx's Key Management service, which is functionally-related to the Accused Products.  WaveLynx's Key Management allows for management of LEAF Custom Cryptographic (LEAF Cc) keys. Ex. 6 (WaveLynx Key Management available at https://wavelynxtech.com/products/key-management/) at 1. In particular, WaveLynx's Key Management "makes owning your keys and provisioning them to devices of your choices an easy process to deploy." Ex. 6 (WaveLynx Key Management) at 1.

25.     On information and belief, WaveLynx sells Accused Products bundled with the MyPass Mobile or Key Management services.  On information and belief, WaveLynx charges a price premium for the Accused Products bundled with the MyPass Mobile or Key Management services.

26.     The Accused Products communicate wirelessly by utilizing radio communications over certain frequencies.

| FEATURES | Mullion Model ET10 | Single Gang Model ET20 | Keypad Model ET25 |
|---|---|---|---|
| **RF Technologies** | **Part Number** | **Part Number** | **Part Number** |
| 13.56 MHz | ET10-2WS | ET20-2WS | ET25-2WS |
| 125 kHz & 13.56 MHz | ET10-3WS | ET20-3WS | ET25-3WS |
| 13.56 MHz & Mobile | ET10-6WS | ET20-6WS | ET25-6WS |
| 125 kHz, 13.56MHz, & Mobile | ET10-7WS | ET20-7WS | ET25-7WS |

Ex. 4 (WaveLynx Ethos Datasheet) at 2. The radio frequencies over which the Accused Products are able to communicate include at least 13.56 MHz and 125 kHz.

27.    The Accused Products also include antennas for radio communications. For example, the ET10-7 includes an antenna array on the back that is able to communicate at a low carrier frequency.



ET10 Internal 1 (back of reader)

Two views of same product shown.

Ex. 7 (FCC ID: 2AEI3WLTC-ET10-1357, April 9, 2018, WaveLynx ET-10 Internal Photos Submitted by WaveLynx to FCC) at 1.

28.    The ET10-7 also includes an antenna array on the front that is able to communicate at a high carrier frequency.

8



ET10 Internal 2 (front of reader)

Ex. 7 (FCC ID: 2AEI3WLTC-ET10-1357, April 9, 2018, WaveLynx ET-10 Internal Photos Submitted by WaveLynx to FCC) at 1.

29.     The antenna tuned for low carrier frequency and the antenna tuned for high carrier frequency are orientated along axes that are substantially parallel to one another. For example, the antennas on the ET10-7 are located along either side of the PCB board for the reader.

30.     The Accused Products also include a reader housing that contains the both antennas. For example, the ET10-7 has a reader housing that houses the PCB board on which the antenna tuned for low frequency communication and the antenna tuned for high frequency communication are located.

9



Ex. 8 (FCC ID: 2AEI3WLTC-ET10-1357, April 9, 2018, WaveLynx ET-10 External Photos Submitted by WaveLynx to FCC) at 1.

31.    Upon information and belief, WaveLynx has actively induced and continues to actively induce others, including third party vendors, who customize, use, and resell the Accused Products in the United States, to directly infringe claims of the '862 patent. On information and belief, purchasers who use the Accused Products make routine use of the Accused Products in a manner that directly infringes claims of the '862 patent, including at least claims 1—4. WaveLynx has had actual knowledge of the '862 patent at least as of March 16, 2016, the date when WaveLynx sought to license the '862 patent from Plaintiffs. Further, on information and belief, in light of the above, WaveLynx has provided and continues to provide at least manuals, training materials, technical support, or other support, to encourage others, such as third party vendors, to perform acts that directly infringe at least claims 1—4 of the '862 patent either with specific intent that the third parties infringe the '862 patent or knowing that there was a high probability that the third parties would infringe the '862 patent while remaining willfully blind to

the infringing nature of the third parties' actions. By way of example, WaveLynx provides

online Portal Access to third parties to support its products.



Ex. 9 (WaveLynx Homepage *available at* https://wavelynxtech.com/). WaveLynx also provides

manuals for the Accused Products. *See* Ex. 10 (WaveLynx Single Gang Installation Guide

*available at* https://wavelynxtech.com/wp-content/uploads/2021/10/WaveLynx-SG-KP-Install-

Guide-Rev-3.4.pdf); Ex. 11 (WaveLynx Mullion Installation Guide *available at*

https://wavelynxtech.com/wp-content/uploads/2021/10/WaveLynx-Mullion-Install-Guide-Rev-

3.4.pdf).

32.     Upon information and belief, WaveLynx has contributed and continues to contribute to infringement of the claims of the '862 patent, including at least claims 1—4, by others, including third party vendors, who customize, use, and resell the Accused Products, by providing the Accused Products, which are specially made or adapted for use in an infringement of claims 1—4 of the '862 patent and are not staple articles of commerce suitable for substantial noninfringing use. WaveLynx has had actual knowledge of the '862 patent at least as of March 16, 2016, the date when WaveLynx sought to license the '862 patent from Plaintiffs. In light of these allegations, WaveLynx had knowledge that the Accused Products were specially made or adapted for use in an infringement of the '862 patent and are not a staple article of commerce suitable for substantial noninfringing use.

33.     As a result of WaveLynx's ongoing and continuous unlawful infringement of the '862 patent, Plaintiffs have suffered and will continue to suffer damages, including but not limited to lost profits for convoyed sales. Plaintiffs are entitled to recover from WaveLynx compensation and monetary relief to the fullest extent allowed by law, which has yet to be determined.

34.     Any sales, offers for sale, or uses by WaveLynx of the Accused Products demonstrate a deliberate and conscious decision to infringe the '862 patent or, at the very least, a reckless disregard of Plaintiffs' patent rights. Given WaveLynx knew of the '862 patent and sought a license to the '862 patent from Plaintiffs, WaveLynx's infringement is willful and Plaintiffs are entitled to treble damages and attorney's fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284, 285.

35.     WaveLynx will continue to infringe the '862 patent unless and until it is enjoined by this Court. WaveLynx's acts of infringement have caused and will continue to cause irreparable harm to Plaintiffs until enjoined by this Court.

**EXCEPTIONAL CASE**

36.     This case is exceptional against WaveLynx.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     For a judgment declaring that WaveLynx has infringed one or more claims of the '862 patent directly, contributorily, and by inducement;

b.     For a judgment declaring that WaveLynx's infringement of the '862 patent is willful pursuant to 35 U.S.C. § 284;

c.     For a grant of an injunction pursuant to 35 U.S.C. § 283, enjoining WaveLynx together with its respective officers, directors, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them from infringing the '862 patent by engaging in any commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any product covered by the '862 patent for the full terms thereof or any additional period of exclusivity to which Plaintiffs or the '862 patent are or become entitled, and from inducing or contributing to such activities;

d.     The entry of an order declaring that Plaintiffs be awarded damages in an amount sufficient to compensate them for WaveLynx's infringement of the '862 patent, together with prejudgment and post-judgment interest and costs;

e.     That WaveLynx be ordered to provide an accounting for the damages resulting from infringement of each of the '862 patent, together with interests and costs, and all other damages permitted by 35 U.S.C. § 284, including an accounting for infringing acts not presented at trial and an award by the court of additional damages for any such infringing acts;

f.     For a judgment declaring that this case is exceptional and awarding Plaintiffs their expenses, costs, and attorneys' fees in accordance with 35 U.S.C. § 285, Rule 54(d) of the Federal

13

Rules of Civil Procedure, and all other applicable statutes, rules, and common law;

g.     The taxation of all allowable costs against WaveLynx; and

h.     For such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

Dated: March 21, 2022

FISH & RICHARDSON P.C.

By: */s/ Martina Tyreus Hufnal*
    Martina Tyreus Hufnal (#4771)
    222 Delaware Avenue, 17th Floor
    Wilmington, DE 19801
    (302) 652-5070
    hufnal@fr.com

    Christopher Marchese
    12860 El Camino Real, Suite 400
    San Diego, CA 92130
    (858) 678-5070
    marchese@fr.com

    Linhong Zhang (#5083)
    Fish & Richardson P.C.
    1000 Maine Ave, SW
    Washington, DC 20024
    (202) 783-5070
    lwzhang@fr.com

**ATTORNEYS FOR PLAINTIFFS HID GLOBAL CORPORATION AND ASSA ABLOY AB**

14