# Exhibit 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Adrianna Gonzalez | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **[IN CHAMBERS] Order re Cross Motions for Summary Judgment regarding Infringement and Invalidity of '862 and '935 Patents**

The Court is presented with cross-motions for summary judgment with respect to infringement and invalidity of the patents in issue.

Plaintiffs HID Global, *et al.* ("HID Global") move for summary judgment finding Defendants Farpointe Data, *et al.* ("Farpointe") liable for infringing various claims of U.S. Patent No. 5,952,935 (the "'935 Patent") and U.S. Patent No. 7,439,862 (the "'862 Patent"). (Pls.' MSJ re Infringement, Docket No. 150.) Farpointe opposes the Motion. (Defs.' Opp. to Pls.' MSJ re Infringement, Docket No. 224.) Farpointe also moves for summary judgment or, in the alternative, partial summary judgment finding Farpointe did not infringe the '935 Patent. (Defs.' MSJ re Noninfringement, Docket No. 165.) HID Global opposes the Motion. (Pls.' Opp. to Defs.' MSJ re Noninfringement, Docket No. 260.)

HID Global also moves for summary judgment or, in the alternative, partial summary judgment finding the '935 and '862 Patents to be valid. (Pls.' MSJ re Validity, Docket No. 153.) Farpointe opposes the Motion. (Defs.' Opp. to Pls.' MSJ re Validity, Docket No. 227.) Farpointe also moves for summary judgment finding the '862 Patent to be invalid. (Defs.' MSJ re Invalidity, Docket No. 160.) HID Global opposes the Motion. (Pls.' Opp. to Defs.' MSJ re Invalidity, Docket No. 262.) The Court has reviewed all evidentiary objections and relies only on admissible evidence in deciding the Motions.

For the following reasons, the Court GRANTS IN PART HID Global's Motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
|---|---|---|---|
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

transponder transmitting data signals at said second high carrier frequency, wherein the first and second antennas are oriented along axes that are substantially parallel to one another.

Farpointe does not dispute that the accused products have a "first reader antenna tuned to operate at a first low carrier frequency enabling data communication with a first transponder transmitting data signals at said first low carrier." (Defs.' Opp. to Pls.' MSJ re Infringement, p. 5.) Thus, the first part of Claim 1 is satisfied. At issue is (1) whether the transponders in the accused products transmit data signals at the same carrier frequency as the exciter signals generated by the second high frequency antennas; and (2) whether the first and second antennas are oriented along axes that are substantially parallel to one another.[8]

First, Farpointe argues that the accused products do not meet Claim 1 because the transponders in the accused products do not transmit data signals at the same high carrier frequency used by the second reader antennas. Farpointe reasons that because the transponder transmits subcarrier signals at a different frequency than the exciter frequency generated by the high frequency antenna, the transponder and antenna do not transmit data at the same "high carrier frequency." (Defs.' Opp. to Pls.' MSJ re Infringement, p. 6.) However, even if the accused products utilize <u>subcarrier</u> signals with frequencies different from the exciter signal, Farpointe does not dispute that the accused products utilize a 13.56 MHZ <u>carrier</u> signal, which is the same frequency as the exciter signal.

The frequency of the subcarrier signals is irrelevant to the infringement analysis because the Claim requires only that the antenna and transponder communicate at the same high carrier frequency. As Dr. Mihran explains, an RFID system can employ multiple levels of modulation through the use of subcarrier signals, which can operate at different frequencies from the carrier signal. (Mihran Report ¶¶ 38-44; <u>see</u> Finkenzeller's RFID Handbook § 6.2.4, fig. 6.12, Pls.' App.

---

[8] Mr. Stewart raises a third dispute over Claim 1 in his Rebuttal Report, asserting that the Claim requires simultaneous data communication between the high and low frequency antennas and the transponders. (Stewart Rebuttal Report, p. 19.) Mr. Stewart, however, cites no support for this assertion, and Farpointe does not include this argument in its pleadings. Moreover, nothing in the claim language imposes a temporal limitation on when the data communications must occur.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

of Exs., Ex. 12 (illustrating that a subcarrier signal can operate at one frequency while the carrier signal operates at another).) Thus, the accused products can operate with a carrier signal frequency of 13.56 MHZ while utilizing subcarrier signals of differing frequencies. Indeed, the transmission of carrier signals is independent of any particular subcarrier that Farpointe may employ. (Mihran Report ¶ 126.) The observation by Farpointe's Vice President Kirk Bierach that data may be transferred at the lower subcarrier rates is beside the point. (Decl. of Kirk Bierach ("Bierach Decl.") ¶ 12, Docket No. 225.) Modulation of the subcarrier signals does not avoid literal infringement of the Claim. When a claim is introduced by the signal "comprising," "infringement is not avoided by the presence of elements or steps in addition to those specifically recited in the claim." Vivid Techs., Inc. v. Am. Science & En'g, Inc., 200 F.3d 795, 811 (Fed. Cir. 1999). Therefore, Farpointe does not avoid infringement by employing subcarrier signals utilizing different frequencies than the carrier signal disclosed in the Patent and used in the accused product.

Second, Farpointe argues that the first and second antennas in the accused products are not "oriented along axes that are substantially parallel to one another." In the Claim Construction Order, the Court construed this term to mean "the first and second antennas are oriented along longitudinal axes substantially equidistant from each other." (Claim Constr., p. 15-17.) The Court also concluded that the "longitudinal axis" is the axis that is perpendicular to the plane defined by the antenna loop. (Id. at p. 16.) Mr. Stewart contends that Claim 1 requires the one and second antennas to be on different planes in order to be oriented along "substantially parallel" axes. (Stewart Rebuttal Report, Oines Decl, Ex. B, p. 19.) Mr. Stewart opines that because the accused products have antennas that are coplanar (on a single plane), they are oriented along only a single longitudinal axis, and thus cannot have axes that are "substantially parallel." (Id.) Mr. Stewart's analysis, however, would be correct only if the "longitudinal axis" was the axis parallel to the plane defined by the antenna loop. The Court previously declined to adopt that construction and found that the longitudinal axis is the axis perpendicular to the plane defined by the antenna loop. (Claim Constr., p. 16.) Moreover, as x-rays of both accused products show, the centers of the first and second antennas are located on different longitudinal axes that are substantially parallel to one another. (Mihran Decl. ¶¶ 261-262 [x-ray of Delta 5 reader], ¶¶ 265-266 [x-ray of Delta 6.4 reader]; Pls.' App. of Exs., Ex. HID1104-1106.)

Case 1:22-cv-00362-GBW Document 23-12 Filed 10/20/22 Page 5 of 19 PageID #: 1920
Case 8:10-cv-01954-JVS-RNB Document 306 Filed 04/13/12 Page 19 of 44 Page ID
#:10915

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

While the accused products are oriented on different, substantially parallel longitudinal axes, it seems clear from Figure 4 of the Patent specification that antennas oriented along the same longitudinal axis would also satisfy this claim requirement. Indeed, two antennas oriented along the same longitudinal axes are "substantially parallel," as two axes that are the same are parallel. Thus, even if Mr. Stewart were correct in concluding that the accused products are oriented along the same longitudinal axis, the accused products would nevertheless read on the Claim.[9]

Because the accused products have transponders and antennas that communicate at the same carrier frequency and because the first and second antennas are oriented along substantially parallel longitudinal axes, the accused products read on Claim 1 of the '862 Patent.

The accused products also infringe dependent Claims 2, 3, and 4 because they satisfy Claim 1 and meet the discrete requirements of the dependant Claims. Claim 2 provides: "The antenna array of claim 1, wherein said first low carrier frequency is nominally 125 kHz." Dr. Mihran opines that this Claim is satisfied, (Mihran Report ¶ 269), Farpointe does not dispute that conclusion. Claim 3 discloses: "The antenna array of claim 1, wherein said second high carrier frequency is about 13.56 MHZ." Dr. Mihran concludes that the accused products read on Claim 3, and Farpointe does not dispute this. Claim 4 states: "The antenna array of claim 1, further comprising a reader housing containing said first and second antennas." Dr. Mihran finds that the accused products include reader housings containing the first and second antennas, thus meeting the requirement of Claim 4. (Mihran Report ¶¶ 273 (citing Lindley Dep. at 23:20-24:7).) Farpointe does not challenge this. Farpointe argues that Claims 2 through 4 are not met by the accused products because they do not read on Claim 1, and thus they cannot read on Claim 1's dependent claims. Because the Court finds that the accused products meet Claim 1, Farpointe's argument regarding the dependent claims fails.

In sum, the accused products literally infringe Claims 1 through 4. Accordingly, HID Global is entitled to summary judgment regarding infringement

---

[9] Note that the Court has previously declined to adopt Farpointe's construction of "parallel axes" as axes that "are separated from each other and do not intersect." (Claim Constr., p. 17.) Thus, the Court's construction left open the possibility that parallel axes need not be separate from one another.

Case 1:22-cv-00362-GBW Document 23-12 Filed 10/20/22 Page 6 of 19 PageID #: 1921
Case 8:10-cv-01954-JVS-RNB Document 306 Filed 04/13/12 Page 20 of 44 Page ID
#:10916

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
|---|---|---|---|
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

with respect to these claims.

### Claims 5 and 6

HID Global alleges that Delta 3, 5.3, and 6.4 infringe independent Claim 5 and dependent Claim 6. Claim Five discloses the following:

> An antenna array for an RFID reader comprising:
>
> a first reader antenna tuned to operate at a first carrier frequency enabling data communication with a first transponder transmitting data signals at said first carrier frequency; and
>
> a second reader antenna tuned to operate at a second carrier frequency different from said first carrier frequency enabling data communication with a second transponder transmitting data signals at said second carrier frequency, wherein <u>said first and second antennas are arranged in at least a partially overlapping arrangement on proximate adjacent planes</u>.

(emphasis supplied). The language of Claim 5 is almost identical to Claim 1, except for the portion underlined above. The accused products meet the first part of the Claim 5 that echoes Claim 1 because each of the products include an antenna tuned to operate at 125 kHz to enable data communication with a transponder that operates at that frequency, and an antenna tuned to operate at 13.56 MHZ to enable data communication with a transponder tuned to operate at that frequency. (Mihran Decl. ¶¶ 275-276.)

The parties dispute the portion of the Claim underlined above. The Court previously construed the underlined language as follows: "first and second antennas arranged so that one antenna may be brought into contact with the other antenna at some point of rotation if one (or both) antenna (antennas) were rotated about its (their) respective center (centers) of mass, the antennas contained within respective planes before rotation in their positions that are near, close, or contiguous." (Claim Constr., p. 18.) Mr. Stewart argues that Claim 5 requires that the antennas reside on separate planes to be in a "partially overlapping

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
|---|---|---|---|
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

arrangement." (Stewart Rebuttal Report, p. 18.) Thus, Mr. Stewart concludes, the coplanar antenna arrangements in the accused products do not infringe Claim 5. (Id.) However, during Claim Construction, the Court rejected the argument that Claim 5 requires that the antenna loops be on separate planes. (Claim Constr., p. 19.) In other words, the Claim Construction and the Claim itself leaves open the possibility that coplanar antennas could meet the requirement of Claim 5. Indeed, the Court interpreted "proximate adjacent planes" to include planes that are "near, close, or contiguous," thereby contemplating a coplanar antenna arrangement. Moreover, undisputed evidence of the antenna configurations in the Delta 3, 5.3, and 6.4 shows that in each accused product, (1) the antennas are contained within respective planes before rotation in their fixed position that are near, close, or contiguous and (2) that if either of the two antennas are rotated about their respective centers of mass, one antenna may be brought into contact with the other antenna at some point in the rotation. (Mihran Report ¶¶ 277-289; Pls.' App. of Exs., Ex. 21, p. 3 [Delta 3 and 5.3], Ex. 22, pp. 2-3 [Delta 5], Ex. 23, pp. 12-13 [Delta 6.4].)[10]

Accordingly, the accused products literally infringe Claim 5 and HID Global is entitled to summary judgment on this claim.

Dependent Claim 6 provides that, "[t]he antenna array of claim 5, further comprising a reader housing containing said first and second antennas." Images of the accused products show that they include a reader housing containing the first and second antennas. (Mihran Report ¶¶ 277-289; Pls.' App. of Exs., Ex. 21, p. 3 [Delta 3 and 5.3], Ex. 22, pp. 2-3 [Delta 5], Ex. 23, pp. 12-13 [Delta 6.4].) Moreover, Farpointe does not bring forth any evidence to challenge the discrete requirements of Claim 6. Therefore, the accused products also infringe Claim 6.

In sum, HID Global is entitled to summary judgement regarding infringement of Claims 5 and 6.

### Claims 9, 10, and 13

---

[10] The Court largely relies on the reproductions of the exhibits in Dr. Mihran's Report because the photographs were illegible in the Plaintiff's Appendix of Exhibits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

HID Global alleges that the Delta 3, 5, 5.3, 6.4, and the CoG-1000 infringe independent Claim 9 and dependent Claim 10. (Pls.' MSJ re Infringement, p. 8.) HID Global asserts that the Delta 3, 5.3, and 6.4 infringe dependent Claim 13. (Id. at p. 9). Claim 9 discloses the following:

> An antenna array for an RFID reader comprising:
>
> a first reader antenna tuned to operate at a first carrier frequency enabling data communication with a first transponder transmitting data signals at said first carrier frequency; and
>
> a second reader antenna tuned to operate at a second carrier frequency different from said first carrier frequency enabling data communication with a second transponder transmitting data signal at said second carrier frequency, <u>wherein said first and second antennas are arranged in an opposing magnetic flux arrangement.</u>

(emphasis supplied). The language of Claim 9 is almost identical to Claim 5, except for the portion underlined above. Dr. Mihran opines that each of the accused products infringe the elements of Claim 9 that repeat Claim 5 for the reasons discussed in the Claim 5 analysis <u>supra</u>. (Mihran Report ¶¶ 293-94.) Farpointe does not set forth any evidence challenging Dr. Mihran's assertion.

The Court construed the language underlined above as follows: an "arrangement where the magnetic flux generated by one reader antenna passes through the other reader antenna in an opposing manner (i.e., both positive and negative magnetic flux from one reader antenna passes through the other reader antenna); positive magnetic flux is magnetic flux which induces a positive voltage across an antenna coil and negative magnetic flux is magnetic flux which induces negative voltage across an antenna coil." (Claim Constr., pp. 21-22.)

The parties do not appear to dispute that the antennas in the accused products are positioned in a magnetic flux arrangement. Dr. Mihran opines that in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

the antenna coil arrangement of the Delta series readers,[11] where the first low frequency antenna is both substantially coplanar with and enclosed within the area of the second high frequency antenna, both positive and negative magnetic flux from the low frequency antenna will necessarily pass through the high frequency reader antenna, as required by Claim 6. (Mihran Report ¶¶ 296-303 (citing RFID Handbook, figs. 4.12, 4.13 [movement of magnetic flux through magnetically coupled loops]; Pls.' App. of Exs., Ex. 82 [showing that the CoG-1000 also utilizes an arrangement wherein the low frequency antenna is substantially coplanar with and within the boundary of the high frequency antenna]).) Farpointe does not offer any evidence challenging Dr. Mihran's assertion regarding the magnetic flux arrangement.

While Farpointe does not dispute HID Global's construction of Claim 9, Farpointe argues that one of the accused products–the CoG-1000–does not infringe this Claim or any other claim in the '862 Patent because it is not an "RFID reader" within the meaning of the '862 Patent. (Defs.' Opp. to Pls.' MSJ re Infringement, p. 2.) The CoG-1000 is part of the Delta product series, (Lindley Dep., Oines Decl., Ex. C, p. 620 at 153:23-25), and it is capable of programming both 125 kHz proximity cards as well as 13.56 MHZ smart-card credentials, (Mihran Report ¶ 56). An "RFID reader" within the meaning of the '862 Patent is a reader capable by itself of generating excitation signals and reading transponders.[12] Dr. Mihran implicitly concludes that the CoG-1000 is an RFID reader within the meaning of the '862 Patent by concluding that the CoG-1000 infringes Claim 9. (Mihran Report ¶ 306.) Moreover, Dr. Mihran opines that the CoG-1000 "necessarily includes the ability to read the cards that they are capable of writing for confirmation of correct programming." (Id. ¶ 57.) HID Global also relies on the testimony of Mr. Scott Lindley, Farpointe's 30(b)(6) witness, who testified that the CoG-1000 is "very similar to the Delta 5 reader" and has the same functionality as a Delta 5 reader. (Lindley Dep. p. 620 at 153:23-154:8.) Mr. Lindley further testified that the only differences between the CoG-1000 and the Delta 5 reader were that the CoG-1000 has a USB interface instead of a wiegand output like the Delta 5 reader, that the CoG-1000 has a larger 125 kHz coil, that the coil

---

[11] All of the readers accused of infringing this claims are Delta series readers.

[12] The Court's construction of "RFID reader" is discussed infra the invalidity analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

configuration is slightly different in the CoG-1000, and that the two products have different enclosures. (Id.) Given that Mr. Lindley testified that the CoG-1000 and Delta 5 readers have the "same functionality" and given the lack of significant differences in the hardware and software in the products, it appears that the CoG-1000 constitutes an "RFID reader" within the meaning of the '862 Patent. That is, this testimony suggests that the CoG-1000 product is an integral reader capable by itself of generating excitation signals and reading transponders; however, at the end of Mr. Lindley's deposition, the following exchange occurred:

> Question: The question for you, Mr. Lindley, the CoG-1000 is a field programmer; correct?
>
> Mr. Lindley: Yes
>
> Question: What does a field programmer do?
>
> Mr. Lindley: It programs Delta cards, Mifare cards, and 125 kilohertz Proximity cards.
>
> Question: Anything else?
>
> Mr. Lindley: No.

(Lindley Dep., p. 622 at 163:12-19.) Thus, from this exchange it is unclear whether Mr. Lindley meant that the only function of the CoG-1000 is to program certain cards or whether he meant that field programmers, along with other functions, are capable of programming only the specific cards he mentioned. Whether the CoG-1000 is capable by itself of generating excitation signals and reading transponders is a genuine issue of material fact that the Court cannot determine as a matter of law on the present record.

In sum, each of the accused products, except the CoG-1000, infringe Claim 9. There is a genuine issue of fact as to whether the CoG-1000 is an "RFID reader" within the meaning of the '862 Patent, and thus summary judgment cannot be afforded with respect to this device.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | <u>SACV 10-1954 JVS (RNBx)</u> | Date | <u>April 13, 2012</u> |
| Title | <u>HID Global Corp. et al. v. Farpointe Data, Inc.</u> | | |

Next, the Court turns to the dependent claims. Claim 10 provides, "[t]he antenna array of claim 9, further comprising a reader housing containing said first and second antennas." Dr. Mihran opines that this Claim is satisfied. (Mihran Report ¶¶ 304-306 (citing Pls.' App. of Exs., Ex. 17).) Farpointe does not challenge Mr. Mihran's assertions. Accordingly, HID Global is entitled to summary judgment regarding infringement of Claim 10 for all the accused products except the CoG-1000.

Claim 13 discloses, "[t]he antenna array of claim 9, wherein said first and second reader antennas are arranged in an overlapping arrangement simultaneous with said opposing magnetic flux arrangement." HID Global alleges that the Delta 3, 5.3, and 6.4 infringe this Claim. (Pls.' MSJ re Infringement, Ex. A.) For Claim 13, the Court adopted the constructions of "overlapping" and "opposing magnetic flux arrangement" from the constructions of Claim 5 and 9, respectively. (Claim Constr., pp. 18-19.) As discussed in the analysis of Claims 5 and 9, the accused products employ an "overlapping" configuration and an "opposing magnetic flux arrangement." (<u>See</u> also Mihran Report ¶¶ 308-309.) Further, Farpointe does not challenge HID Global's contention that the accused products satisfy this claim language. Accordingly, the accused products infringe Claim 13.

<u>Claims 14 and 16</u>

HID Global alleges that the Delta 5 and 6.4 infringe Claims 14 and 16. Claim 14 discloses the following:

<u>An RFID reader for an RFID system</u> comprising:

an antenna array including a first reader antenna tuned to operate at a first low carrier frequency enabling data communication with a first transponder transmitting data signals at said first low carrier frequency and a second reader antenna tuned to operate at a second high carrier frequency different from said first low carrier frequency enabling data communication with a second transponder transmitting data signals at said second high carrier frequency, wherein the first and second antennas are oriented along axes that are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

> substantially parallel to one another; and
>
> a <u>signal generator coupled with said first and second reader antennas</u>.

(Emphasis supplied). Claim 14 is essentially the same as Claim 1, except as indicated by the underlined terms. Claim 14 discloses "an RFID reader for an RFID system" rather than "an antenna array for an RFID reader," and it includes "a signal generator coupled with said first and second reader antennas."

With respect to the "RFID reader for an RFID system," it is undisputed that each of the accused products is an RFID reader within the meaning of the '862 Patent. (Mihran Report ¶ 311.) Furthermore, the accused devices also include "a signal generator coupled with said first and second antennas," as the Delta series readers include two signal generators coupled to the first and second antennas to generate the 125 kHz and 13.56 MHZ interrogation signals that are transmitted to interrogate the transponders. (Id. ¶¶ 310-315; see also Pls.' App. of Exs., Ex. 42.) Farpointe does not challenge HID Global's assertions regarding Claim 14. Accordingly, the accused products infringe Claim 14, and HID Global is entitled to judgment on this Claim as a matter of law.

Dependent Claim 16 discloses the following:

> The RFID reader of claim 14, wherein said signal generator includes a discrete first signal generator coupled with said first reader antennas for generating signals for transmission from said first reader antenna and a discrete second signal generator coupled with said second reader antenna separate from said discrete first signal generator for generating signals for transmission from said second reader antenna.

HID Global sets forth sufficient evidence to show that the accused products literally infringe Claim 16. Farpointe does not offer any rebuttal evidence. As discussed in the Claim 14 analysis, Dr. Mihran opines that the first and second signal generators used in the accused products are discrete from one another. (Mihran Report ¶ 317.) The low frequency signal generator utilizes a 20 MHZ

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

frequency reference in conjunction with the PIC microcontroller to generate the 125 kHz driver signal coupled to the first antenna. (Id.) The high frequency signal generator uses a different or discrete 13.56 MHZ frequency reference and the NXP Reader IC to generate the 13.56 MHZ signal coupled to the second antenna. (Id.) For these reasons, the accused products meet Claim 16.

In sum, HID Global has presented sufficient evidence to show that the accused products infringe Claims 14 and 16, and Farpointe has failed to challenge or refute this evidence. Accordingly, HID Global is entitled to judgment on these Claims as a matter of law.

<u>Claims 17 and 19</u>

HID Global alleges that the Delta 3, 5.3, and 6.4 infringe Claims 17 and 19. (Pls.' MSJ re Infringement, pp. 10-11.) Claim 17 discloses the following:

> <u>An RFID reader for an RFID system comprising</u>:
>
> an antenna array including a first reader antenna tuned to operate at a first low carrier frequency enabling data communication with a first transponder transmitting data signals at said first low carrier frequency and a second reader antenna tuned to operate at a second high carrier frequency different from said first low carrier frequency enabling data communication with a second transponder transmitting data signals at said second high carrier frequency, wherein the first and second antenna are arranged in at least a partially overlapping arrangement alone proximate adjacent planes; and
>
> <u>receiver electronics coupled with said first and second reader antennas</u>.

Claim 17 is essentially the same as Claim 5, except as indicated by the underlined terms. Because the same products are accused of infringing Claims 5 and 17 and because the accused products infringe Claim 5, all the elements of Claim 17 that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
|---|---|---|---|
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

overlap with Claim 5 are satisfied.[13]

With respect to the "RFID reader for an RFID system," it is undisputed that each of the accused products is an RFID reader within the meaning of the '862 Patent. (Mihran Report ¶ 311.) Dr. Mihran opines that all of the accused products include receiver electronics coupled to each of the first and second antennas. (Id. ¶¶ 321-27; see Pls.' App. of Exs., Ex. 42.) Farpointe does not dispute Dr. Mihran's conclusions or set forth any evidence suggesting the accused products do not include receiver electronics coupled to the first and second antennas. Accordingly, HID Global has sufficiently demonstrated that the accused products literally infringe Claim 17.

Dependent Claim 19 provides:

> The RFID reader of Claim 17, wherein said receiver electronics includes discrete first receiver electronics coupled with said first reader antenna for conditioning signals received by said first reader antenna and discrete second receiver electronics coupled with said second reader antenna separate from said discrete first receiver electronics for conditioning signals received by said second reader antenna.

The first and second receiver electronics used in the accused readers are discrete from one another, as discussed in the Claim 17 analysis. (Mihran Report ¶ 329.) The low frequency receiver electronics includes circuitry for detecting, amplifying, and filtering a modulated signal from a 125 kHz transponder, as well as converting the detected modulation components into digital pulses. (Id.) In other words, the receiver electronics condition the signal received by the first reader antenna. (Id.; see Pls.' App. of Exs., Ex. 42.) The high frequency receiver electronics is discrete from that of the low frequency receiver electronics, comprising the NXP Reader IC

---

[13] HID Global's opening brief for summary judgment regarding infringement claims that the Delta 5 also infringes Claims 17 and 19; however, HID Global notes in its reply brief that this was the result of a typographical error in Dr. Mihran's report. Thus, the Court assumes that the Delta 5 was also listed erroneously in the infringement chart under Claims 17 and 19 in Exhibit A to the HID Global's opening brief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

used for conditioning the 13.56 MHZ signals received by the second antenna. (Id. ¶ 330.) Thus, there is a separate set of receiver electronics that condition the lower frequency signal received by the second reader antenna. (Id.) Because the accused products contain separate receiver electronics that condition the signals received by the respective first and second reader antennas, these products literally infringe Claim 19. (See id. ¶¶ 328-331.) Farpointe does not set forth any evidence suggesting the elements of this Claim are not satisfied.

In sum, the accused products read on Claims 17 and 19, and thus HID Global is entitled to judgment as a matter of law with respect to infringement of these Claims.

Claims 20-22

HID Global alleges that the Delta 3, 5, 5.3, 6.4, and the CoG-1000 infringe Claims 20, 21, and 22. (Pls.' MSJ re Infringement, p. 11.) Independent Claim 20 discloses the following:

An antenna array for an RFID reader comprising:

a first reader loop antenna having a first loop and tuned to operate at a first carrier frequency enabling data communication with a first transponder transmitting data signals at said first carrier frequency; and

a second reader loop antenna having a second loop and tuned to operate at a second carrier frequency different from said first carrier frequency enabling data communication with a second transponder transmitting data signals at said second carrier frequency, wherein a first plane defined by the first area is substantially orthogonal to a direction of magnetic flux created through the first antenna, wherein a second plane defined by the second area is substantially orthogonal to a direction of magnetic flux created through the second antenna, wherein said first and second loops are arranged relative to one another such that a portion of the first area in the first plane overlaps a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **SACV 10-1954 JVS (RNBx)** | Date | April 13, 2012 |
| Title | **HID Global Corp. et al. v. Farpointe Data, Inc.** | | |

portion of the second area in the second plane.

Claim 20 is similar to Claims 1 and 9, except it discloses first and second "loop" antennas, and provides the portion underlined above. It is undisputed that each of the accused devices use conventional loop antennas.[14] (Mihran Report ¶ 333.) HID Global offers sufficient evidence to show that the accused products meet each element of Claim 20; Farpointe does not offer any evidence to challenge HID Global's assertions regarding Claim 20.

First, HID Global presents evidence that the orthogonal arrangement requirement is satisfied. (Mihran Report ¶ 335.) Dr. Mihran explains that the general path of magnetic flux lines in the vicinity of each of the two coil antennas as used in the Delta series readers is well known in the RFID art. (Id. ¶ 335 (citing Finkenzeller RFID Handbook p. 63, Fig. 4.3).) For the Delta reader antenna coils, the direction of the magnetic flux lines produced by a coil antenna inside the area circumscribed by the windings is substantially orthogonal to the plane defined by the loop antenna area, as depicted in Figure 4.3 of the Finkenzeller RFID Handbook. (Id. ¶ 336.) Thus, the loop antennas used in the Delta series satisfy this limitation. (Id.)

Second, HID Global presents evidence that the "first and second loops are arranged relative to one another such that a portion of the first area in the first plane overlaps a portion of the second area in the second plane," as required by Claim 20. The Court previously construed this element of the Claim to mean "a portion of the area enclosed by the first reader loop antenna covers or is covered by a portion of the area enclosed by the second reader loop antenna as viewed along the longitudinal axis." (Claim Constr., p. 22.) As discussed supra, the antennas in the accused products are coplanar, and thus an area enclosed by the first reader loop antenna covers or is covered by a portion of the area enclosed by the second reader loop antenna. (Mihran Report ¶¶ 330-340; see Pls.' App. of Exs., Ex. 21, p. 3 [Delta 3 and 5.3], Ex. 22, pp. 2-3 [Delta 5], Ex. 23, pp. 12-13 [Delta 6.4].)

Accordingly, the accused products other than the CoG-1000 meet all the

---

[14] Though Farpointe does not explicitly dispute this element, Farpointe disputes that the CoG-1000 satisfies any part of the '862 Patent because it asserts that the CoG-1000 is not an RFID reader.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
|---|---|---|---|
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

elements of Claim 20, and thus literally infringe this Claim.

HID Global also presents sufficient evidence that the accused products infringe dependent Claims 21 and 22. Claim 21 discloses, "[t]he antenna array of claim 20, wherein the directions of magnetic flux created through the first and second antennas are not orthogonal." As discussed <u>supra</u>, when antennas are configured in a substantially coplanar arrangement, the magnetic flux created through the first and second antennas is substantially parallel, and therefore the magnetic fluxes "are not orthogonal." (Mihran Report ¶ 342; RFID Handbook, fig. 4.3.) Farpointe does not challenge this evidence. Accordingly, the accused products, except the CoG-1000, read on Claim 21. Claim 22 provides, "[t]he antenna array of Claim 20, wherein said first and second loops have a parallel orientation and are arranged relative one another such that a size of the portion of the first area aligning with the portion of the second area is less than at least one of a size of the first area and a size of the second area." Dr. Mihran opines that each of the first low frequency antennas in the accused products lie within the area circumscribed by the loops of the high frequency antenna when viewed along the axis of the antennas. (Mihran Report ¶ 344.) Thus, the "size of the portion of the first area aligning with the portion of the second area" is equal to the size of the first antenna area. (<u>Id.</u>) Since the first antenna area is necessarily less than the area of the second, larger antenna, the claim limitation is met. (<u>Id.</u>) Farpointe does not challenge this evidence. Accordingly, the accused products, except the CoG-1000, read on Claim 22.

Thus, the Court concludes as a matter of law that the accused products, except the CoG-1000, infringe Claims 20 through 22, and thus HID Global is entitled to summary judgment regarding infringement of these Claims with respect to these products.

In sum, the Court holds that HID Global's Motion for Summary Judgment regarding Infringement is granted with respect to all the accused products, except the CoG-1000. Farpointe's Motion for Summary Judgment regarding Noninfringement is denied.

**B.    Invalidity Analysis**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  **SACV 10-1954 JVS (RNBx)**   Date   April 13, 2012

Title   **HID Global Corp. et al. v. Farpointe Data, Inc.**

picture above." (Stewart Report, p. 33.) The red coil in the picture, however, is not connected to any leads and it does not include any tuning elements, such as capacitors in conjunction with windings having proper parameter values. (Mihran Report ¶¶ 371.) Such tuning capacitors are contemplated as part of the reader disclosed in the '862 Patent, as evidenced by Figure 1 and the description of tuning capacitors in the '862 Patent specification. ('862 Patent, fig. 1, col. 6:8-13.) Dr. Mihran opines that one of ordinary skill in the art would not understand a coil with unconnected leads and no tuning components to be "tuned to operate" to a particular carrier frequency. (Mihran Report ¶¶ 367-372.) The Court finds that Farpointe has not provided sufficient evidence to show that the Dynasys Device contained two antennas "tuned to operate" at different carrier frequencies, and thus the Dynasys Device does not anticipated Claim 17.

HID and Farpointe dispute several additional elements of the claims at issue; however, because every implicated claim requires disclosure of (1) an "RFID reader" or an "antenna array" for an RFID reader; and (2) two antennas "tuned to operate" at different carrier frequencies, a failure to meet these requirements necessarily means that the prior art cannot anticipate any of the claims at issue in the '862 Patent. Accordingly, the Court finds the '862 Patent is valid under section 102.

      b.    **Validity of Patent under 35 U.S.C. § 103**

Farpointe argues that the '862 Patent is invalid under section 103 because Farpointe disclosed prior art for each element of the claims at issue in its Invalidity Contentions, and, considered compositely, combinations of prior art render each individual claim obvious. (Defs.' Opp. to Pls.' MSJ re Validity, pp. 13-14; see Invalidity Contentions, Oines Decl. in support of Defs.' MSJ re Invalidity, Ex. B.) As discussed supra, this is insufficient to show that the a claim is obvious. Farpointe presents no evidence other than the Invalidity Contentions to show that the claims of the '862 Patent are obvious. Thus, the claims are valid under section 103.

      c.    **Validity of Patent under 35 U.S.C. § 112**

Farpointe asserts that the claims of the '862 Patent are indefinite because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-1954 JVS (RNBx) | Date | April 13, 2012 |
| Title | HID Global Corp. et al. v. Farpointe Data, Inc. | | |

they disclose "both a system and the method for using that system," which renders a patent invalid under section 112. (Defs.' Opp. to Pls.' MSJ re Validity, p. 14 (citing IPXL Holdings, 430 F.3d at 1384).) Farpointe argues that Claim 1 of the '862 Patent requires both a system and method for using a system because it requires "an antenna array for an RFID reader" (the system or apparatus) and that the antenna "enabl[e] data communication with a first transponder transmitting data signals" (the process). (Id.) However, the latter quoted portion is not a "process"; rather, it is a defining characteristic of the antenna array. Moreover, the claim does not disclose "method steps of using" the antenna array–it discloses the capabilities of this particular antenna array. IPXL Holdings, 430 U.S. at 1384 (quoting PTO Manual of Patent Examination Procedure § 2173.05(p)(II) (1999)). Accordingly, Farpointe's reliance on the IPXL Holdings decision is misplaced. Farpointe has not demonstrated any indefiniteness or lack of enablement in the claims of the '862 Patent, and thus the Patent is valid under section 112.

In sum, the '935 and '862 Patents are valid as a matter of law. The Court grants HID Global's motion and denies Farpointe's motion.

IV. Conclusion

For the foregoing reasons, the Court GRANTS HID Global's Motion regarding Infringement for all accused products, except (1) the P-600 and P-700 with respect to the '935 Patent and (2) the CoG-1000 with respect to the '862 Patent. The Court GRANTS HID Global's Motion regarding Validity as to the '935 and '862 Patents. The Court DENIES Farpointe's Motions.

IT IS SO ORDERED

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | ag | | |